SLATTERLY *v.* NEW YORK, L. E. & W. R. Co.

(*Supreme Court, General Term, Fourth Department.* January 19, 1889.)

1. MASTER AND SERVANT—RISKS OF EMPLOYMENT—ESTOPPEL.
Where it is shown that it had been the custom of defendant for several years to order its track-repairers to assist in removing wrecks in emergencies, and that plaintiff, a track-repairer, had several times been so employed, he cannot insist, in an action for injuries received while assisting in removing a wreck, that such work was not part of his duty, and that he did not, therefore, assume the risk incident to it.

2. SAME—FELLOW-SERVANTS.
Plaintiff, employed as a track-repairer, was one of a gang of workmen called from various branches of defendant's service to remove a wreck from its railroad track. By order of the boss he was assisting at a derrick, the handle of which flew back and struck him. The accident was caused by the negligence of another employé, a switchman, who was ordered by the station master to operate the brake. *Held,* that plaintiff and the man at the brake were fellow-servants, and defendant was not liable.[1]

Appeal from circuit court.

Action by Timothy Slatterly against the New York, Lake Erie & Western Railroad Company for injuries received while in defendant's employ. Defendant appeals from a judgment entered on a verdict for plaintiff, and from an order denying a motion for a new trial.

*J. H. Stevens, Jr.,* for appellant. *Edmund O'Connor,* for respondent.

KENNEDY, J. On the 12th day of November, 1885, the plaintiff received the injury complained of, which was occasioned by his being struck by the handle of a derrick while it was being used in removing a wreck from the defendant's road. The plaintiff had been in the defendant's employ as a track-repairer for some 30 years before the accident, and during that time had been accustomed to go to places where wrecks had occurred, with other track-repairers, and there performing such work as was required of him in repairing the damages. The accident in question occurred about two miles west of the village of Deposit. One Philip Eidelman was foreman of the plaintiff's track gang, which consisted of five persons besides him. Early in the morning of the day in question the plaintiff and others of the gang went with Eidelman to the place of the wreck, and commenced the work of removing and clearing it up, and continued until the plaintiff received his injury, some time in the afternoon. The defendant provided, and there was used in and about said business, a derrick, placed upon a platform resting upon trucks, fitted for running over the road to any point where its use might be required. The derrick was of the usual construction of machines of that kind, and simple in its operation. No question is made but that it was properly constructed, and was in good condition. It was used for raising and lowering heavy bodies, and was operated by gearing at the foot of a perpendicular, which was moved by a windlass, turned by cranks or handles attached. They were double, and worked by hand-power, two or more men working each handle. They were placed about four feet above the platform upon which the men stood while working. There was about three feet of the platform unobstructed at the rear of the shaft, where those engaged in hoisting could step back, and be out of the way of and safe from the handles revolving. In front of the shaft the platform was clear.

---

[1] As to who are fellow-servants, within the rule exempting the master from liability for injuries to one resulting from the other's negligence, see Sullivan v. Railway Co., (Mo.) 10 S. W. Rep. 852, and note; Wolcott v. Studebaker, 34 Fed. Rep. 8, and note; Sullivan v. Railroad Co., (N. Y.) 20 N. E. Rep. 569.

Chains running over pulleys were used for hoisting.   At the foot of the shaft, connected with the gearing, was a brake moved by hand, and by a man standing there.   This served, when properly attended to, to so far throw the machinery out of gear as to prevent the handles revolving when lowering the burden attached.   At the time of the accident some 30 or 40 men were present, more or less engaged in and about the business.   Among these were the car-inspector, division superintendent, and section foreman.   Ward, the station keeper near the place, spoke to Eidelman, and asked him if he could not have the men unload a truck, being one in the wreck.   Eidelman upon this told the men to get on the car and unload it.   Several got upon the platform of the derrick truck, and the question was asked by some of them of the plaintiff, who was used to handling the brake.   He replied, "Tommy Holloran." Then Ward told Holloran to get on the car and attend the brake.   This he did, and five men, among them the plaintiff, took hold of the handles, and commenced turning and raising it.   After raising it the required height the arm of the derrick was moved around by guy-ropes to the proper place for dumping.   Reaching that point, Ward gave the order to lower.   This was repeated two or three times.   All the men stepped back but the plaintiff.   Holloran did not apply the brake, and as the truck was lowered the arm or crank suddenly turned back towards the plaintiff, knocking him from the platform, and occasioning the injury complained of.   The omission to apply the brake caused the backward revolution of the crank.   It appeared that Holloran had worked with the derrick, and knew the manner the brake was applied, and for what purpose it was used.   He was, so far as shown, a competent man for the place.   It appears that he had been in the defendant's employ for many years; that he had been twice discharged for intoxication, but had been reinstated; that at the time of the accident he was perfectly sober.   How long it had been since he had drank any intoxicating liquors does not appear.   It was shown that the plaintiff had known him for several years.

The contention primarily on the part of the plaintiff is that his engagement by the defendant was that of track-repairer; that to help man the derrick was not a part of his duty; and therefore that he did not assume the risk incident to such employment.   It appears that, while there was a squad of men, four or five, known as the "wrecking gang," whenever a wreck of any magnitude occurred the track-repairers and other employés in the vicinity were called into requisition, and joined in clearing it away; that this had been the custom for years before this accident; and that the plaintiff had frequently been engaged with others in that capacity, and in using the derrick in question.   He therefore knew that in emergencies of this kind he was liable to be called on, and that the work to be done was a part of the duties that devolved upon him as incident to his employment.   Knowing this, and continuing in the service of the defendant with such knowledge and his experience, he must be regarded as continuing his employment, and assuming the risks this particular work which was likely to be required of him entailed.

The further claim by the plaintiff is that the negligence of Holloran in not applying the brake was the cause of the injury, and that for this the defendant is liable.   To determine this question it becomes important to inquire whether the defendant is liable for the acts of Holloran, or whether in this regard Holloran was not simply a co-servant with the plaintiff, and for whose negligent conduct the defendant is not responsible.

Holloran's general employment by the defendant was that of switchman; but, like the plaintiff and others engaged in their ordinary business, he was called upon from time to time to aid in clearing away wrecks.   He was familiar with and had frequently and always successfully used the derrick in question in and about the performance of this business.   He was upon the ground, engaged with others.   When a call was made for men to help move the truck he did not get upon the platform with the plaintiff and others; but

it would seem when inquiry was made as to who should handle the brake the plaintiff, apparently knowing Holloran's familiarity with it, named him as the proper man.    Ward thereupon called him to get on top of the car, and perform this duty.    This he did, and it is claimed that he negligently omitted to set the brake when the truck was lowered, and this omission is the act complained of.    In his work about the derrick, and in handling the brake, I do not think Holloran represented the defendant, or that it was in any manner liable for his negligence.    He was requested to take the place by Ward, the station keeper.    Ward had no authority over Holloran or the other persons there, nor did he represent the defendant in regard to him or his acts.    In operating the machinery, the derrick, he was simply a fellow-servant with the plaintiff; and it did not change this relation because the track supervisor and division superintendent were upon the ground.    So far as the evidence shows, neither of them knew or had any information before this accident happened that Holloran had been called upon by Ward to run the derrick.    But if they, or either of them, had possessed this knowledge, or had ordered Holloran there, it would not at all have affected the question of the defendant's liability. *Kenny* v. *Steam-Ship Co.*, 23 Jones & S. 558.    *Culligan* v. *Jones*, 28 Wkly. Dig. 2.    The liability of the master does not depend upon the grade or rank of the employé whose negligence caused the injury.    A superintendent, although having power to employ men or to represent the master in other respects, is, in the management of the machinery, a fellow-servant of the other operatives. *Crispin* v. *Babbitt*, 81 N. Y. 516; *Laning* v. *Railroad Co.*, 49 N. Y. 521; *Besel* v. *Railroad Co.*, 70 N. Y. 171; *Rose* v. *Railroad Co.*, 58 N. Y. 217; *Albro* v. *Canal Co.*, 6 Cush. 75; Wood, Mast. & Serv. §§ 431, 436–438.    If the act which the servant is required to perform pertains only to the duty of the operative, the employé performing it is a mere servant, and the master, although liable to strangers, is not liable to a fellow-servant for its improper performance.    See cases above cited; also, *Scott* v. *Sweeney*, 34 Hun, 292; *Cahill* v. *Hilton*, 106 N. Y. 512, 13 N. E. Rep. 339; *Hudson* v. *Steam-Ship Co.*, 110 N. Y. 625, 17 N. E. Rep. 342.

In this case it is conceded that the derrick was properly constructed, and adequate to perform all the services required of it, and that it was in a good and safe condition for use.    It appears that Holloran was a competent person, of ordinary ability and intelligence; that he was acquainted with the derrick and the operation of the brake, and had run it successfully prior to the accident.    The fact that at some previous time he had been discharged for intoxication tended in no manner to show negligence by any one through whose instrumentality he ran the machine, since it appears that he was entirely sober at the time the work was done, and it does not appear how long before the accident, or under what circumstances, the alleged intoxication occurred.    In the light of the evidence, it is impossible to charge the defendant with personal negligence causing or contributing to the plaintiff's injury.    Judgment and order reversed, and a new trial ordered; costs to abide the event.    All concur.